UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDACORP, INC., an Idaho corporation,<br><br>Plaintiff,<br>v.<br><br>AMERICAN FIBER SYSTEMS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:11-cv-00654-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendant American Fiber Systems, Inc. filed a Motion to Dismiss for Improper Venue, under Rule 12(b)(3) of the Federal Rules of Civil Procedure, or, in the alternative, for a Change of Venue pursuant to 28 U.S.C. § 1404(a).  The motion has been fully briefed and the Court has determined oral argument would not assist the decision-making process. The Court will therefore decide the motion without a hearing.  For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In February 2007, plaintiff IDACORP, INC. sold another company, IDACOMM, to defendant American Fiber Systems.  IDACOMM is an Idaho telecommunications corporation headquartered in Idaho.  In connection with this transaction, American Fiber

acquired IDACOMMM's offices and employees in Boise, and the company provides telecommunications services to Idaho customers.

In December 2011, nearly five years after the deal closed, IDACORP sued American Fiber in this Court for breach of contract and breach of the implied covenant of good faith and fair dealing.  American Fiber responded with the pending motion to dismiss or transfer.

## ANALYSIS

### A.    Motion to Dismiss

American Fiber moves to dismiss plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Under this rule, the Court need not accept the pleadings as true and may consider facts outside the pleadings.  *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).

American Fiber argues that dismissal is proper because the parties' stock purchase agreement contains a forum-selection clause, which requires any litigation to take place in New York.  The agreement also contains a choice-of-law clause, indicating that it shall be "governed by and construed in accordance with" New York law.

Preliminarily, federal law governs in determining whether the forum-selection clause is enforceable – despite the existence of the New York choice-of-law provision. *See Jones v. GNC Franchising,* 211 F.3d 495, 497 (9th Cir. 2000) (applying federal law to determine enforceability of forum-selection clause, despite Pennsylvania choice-of-law clause) (citing *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir.1988)).  The Court also observes, however, that New York and federal law regarding

the enforceability of forum-selection clauses are substantially the same.  *See, e.g.*, *In re Betlem*, 753 N.Y.S. 2d 632, 633  (App. Div. 2002).  So the parties' debate as to which law governs is academic.

At any rate, the federal principles governing the enforceability of forum-selection clauses are enunciated in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  According to *Bremen*, a forum-selection clause is prima facie valid and is only set aside if it unreasonable.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).  "A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court'; or (3) enforcement of the clause would contravene the strong public policy of the forum in which the suit is brought." *Id*. (internal citations omitted).

Here, the Court finds that the forum-selection clause is unenforceable for the third-listed reason – enforcement of the clause would contravene Idaho public policy.  Idaho has a strong public policy against enforcement of forum-selection clauses, which is articulated in Idaho Code § 29-110.  This statute provides that "every stipulation or condition in a contract, by which any party is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals . . . is void."  Idaho Code § 29-110.  The Idaho Supreme Court has recognized the state's policy against enforcing forum-selection clauses many times.  *See, e.g., Cerami–Kote v. Energywave Corp.*, 773 P.2d 1143, 1147 (Idaho 1989) (forum-selection clause unenforceable because it "violates

the public policy expressed in I.C. § 29-110 . . . .").  Similarly, this Court has repeatedly

invoked Idaho Code § 29-110 in striking down forum-selection clauses.  *See, e.g.,*

*Spencer v. Capital One Bank,* Case No. CV-07-197-S-BLW, 2007 WL 2700405, at *1

(D. Idaho Sept. 11, 2007); *Brandt v. ComTrust, Inc.*, Case No. CV06-166-S-EJL, 2006

WL 2136145, at *3 (D. Idaho July 28, 2006).

American Fiber says the result should be different here because IDACORP is a

sophisticated business – not an individual – and thus less likely to need the protections of

Idaho Code § 29-110.  Relatedly, American Fiber points out that IDACORP actually

negotiated the provisions of this agreement, unlike many individuals who sign

agreements without negotiating them.

The problem with American Fiber's argument is that Idaho Code § 29-110 does

not limit its application to individuals who sign contracts without negotiating their terms.

The statute applies to "every" forum-selection clause, signed by "any" party.  Idaho Code

§ 29-110.

American Fiber also points to Judge Williams' decision in *Automated Solutions,*

*Inc. v. Fadal Machining Centers, LLC,* 2011 WL 2182457 (D. Idaho June 6, 2011).  In

that case, the Court enforced a forum-selection clause, but the case is not instructive here

because the party opposing transfer did not raise Idaho Code § 29-110.

Finally, American Fiber suggests that deferring to Idaho's statute would be akin to

allowing state law – rather than federal law – govern the enforcement of forum-selection

clauses.  This argument misses the mark.  Federal law expressly contemplates

considering state policies in determining the enforceability of forum-selection clauses.

*See Bremen*, 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, *whether declared by statute* or by judicial decision.") (emphasis added).  Stated differently, federal law makes room for state policies that are hostile to forum-selection clauses.

For all these reasons, the Court will deny American Fiber's motion to dismiss based on Rule 12(b)(3).

**B.    Motion to Transfer**

The Court will also deny American Fiber's motion to transfer.  American Fiber brings this motion pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) accords a district court broad discretion with respect to transferring a case.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

The Court decides whether to exercise its discretion "according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Jones*, 211 F.3d at 498 (citing *Stewart,* 487 U.S. 22 (1988)).  More specifically, the Ninth Circuit has identified the following factors district courts may consider in determining whether a transfer is appropriate:

(1)    the location where the relevant agreements were negotiated and executed,

(2)    the state that is most familiar with the governing law,

(3)     the plaintiff's choice of forum,

(4)     the respective parties' contacts with the forum,

(5)     the contacts relating to the plaintiff's cause of action in the
        chosen forum,

(6)     the differences in the costs of litigation in the two forums,

(7)     the availability of compulsory process to compel attendance of
        unwilling non-party witnesses, and

(8)     the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99.  "Additionally, the presence of a forum selection clause is a

"significant factor" in the court's § 1404(a) analysis." *Id.* (citing *Stewart*, 487 U.S. at

29).  The Ninth Circuit has also stated, however, that the "relevant public policy of the

forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.*

        IDACORP convincingly argues that these last two factors – the forum-selection

clause and Idaho's public policy against enforcing them – are a wash.  If both are equally

strong factors and they pull in opposite directions, they effectively cancel each other out.

The Court is thus left with the other eight factors listed above.  After considering these

factors, the Court concludes that American Fiber has failed to meet its burden of showing

that the convenience of the parties and witnesses, as well as the interests of justice,

require a transfer to New York.

### 1.   Factor One – Location of the Agreement's Negotiation & Execution

        The first factor weighs in favor of IDACORP – mainly because it appears that the

agreement was mostly negotiated in Idaho.  American Fiber points out that the agreement

closed in the New York offices of IDACORP's counsel.  IDACORP, however, says that

its representatives did not personally travel to New York for the closing or during the negotiations. American Fiber, on the other hand, sent representatives to Idaho at least four separate times to engage in negotiations and due diligence.

### 2.   Factor Two – Familiarity with Governing Law

The second factor, familiarity with governing law, weighs in favor of transferring this case to New York – but only slightly. As already noted, the stock purchase agreement provides that it will be governed by New York law. As a general rule, if questions of substantive state law are raised in a particular action, it is advantageous to have those issues decided in a federal court sitting in the state whose substantive law governs. *Van Dusen v. Barrack*, 376 U.S. 612 (1964). On the other hand, federal courts are routinely tasked with applying the laws of other states, and American Fiber has not indicated that the substantive law applicable to its claims is complex or significantly different from Idaho law. So the Court is according very little weight to this factor. *Accord Marks v. Fireman's Fund Ins. Co.*, 109 F. Supp. 800 (S.D.N.Y. 1953).

### 3.   Factor 3 – Plaintiff's Choice of Forum

Due to the "strong presumption in favor of honoring plaintiff's choice of forum" the third factor – plaintiff's choice of forum – weighs in IDACORP's favor. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). American Fiber argues that plaintiff's choice of forum should not be accorded any deference because plaintiff ignored the forum-selection clause in choosing to file this action in Idaho. But as explained above, the significance of the forum-selection clause is effectively canceled

out by Idaho's strong public policy against such clauses.[1]

### 4.  Factors 4 & 5 – Contacts with the Forum

The fourth and fifth factors, the respective parties' contacts with the forum and "the contacts relating to the plaintiff's cause of action in the chosen forum," *Jones*, 211 F.3d at 498-99, favor IDACORP.

American Fiber does not meaningfully discuss the parties' contacts with the chosen forum – Idaho.  Instead, it focuses on the parties' contacts with New York.  Ultimately, this does little to persuade the Court to transfer this action to New York.  As the moving party, American Fiber cannot just demonstrate that New York is a convenient forum; it must also show that Idaho is inconvenient.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.")  By definition, this involves comparing the two forums – not just focusing on why New York might be a convenient forum.  *Cf. id.* (transfer inappropriate where it "would merely shift rather than eliminate the inconvenience.")

IDACORP*, by contrast, has explained that Idaho is a convenient forum for this litigation in terms of the parties' contacts with Idaho.  *See Opp.*, Dkt. 13, at 14, 16-17. Among other things, the claims at issue in this lawsuit ultimately arise out of the contractual rights and obligations related to American Fiber's purchase of an Idaho

---

[1]  Alternatively, even if the forum-selection clause neutralizes the deference normally accorded to plaintiff's choice of forum, American Fiber has still failed to demonstrate that a transfer to New York is appropriate.

corporation headquartered in Boise. Further, as already discussed, it appears that this contract was largely negotiated in Idaho.

> **5. Factors Six, Seven & Eight – Costs of Litigation; Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses, and Ease of Access to Sources of Proof**

The sixth, seventh, and eighth factors – costs of litigation; ability to compel non-party witnesses to attend depositions, and the ease of access to sources of proof – favor litigating the case in Idaho, rather than New York.

In considering these factors, the Court first observes that American Fiber has requested a transfer based on vague, general statements. For example, regarding the location of witnesses, American Fiber says only that it "has witnesses in this matter who still reside in New York, . . . ." *Mot. Memo.,* Dkt. 12-1, at 17. The Court requires a more specific showing before transferring this case to another district based on the convenience and availability of witnesses. *Cf. Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989) (to support its contention that witnesses were beyond the trial court's reach, moving party "obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included").

IDACORP, on the other hand, points out that the IDACORP employees who negotiated the sale of IDACOMM to American Fiber reside in Boise and all of IDACORP's documents related to IDACOMM are in Boise. Additionally, this litigation implicates a Nevada project, and it appears that some witnesses and documents might be located in Nevada. In that respect, Idaho would presumably be a superior forum because it so much closer to Nevada. Finally, American Fiber says only that it *was* headquartered

in New York.  IDACORP indicates that American Fiber now appears to be operating out of Louisville, Colorado.  Louisville is 1,000 flight miles closer to Boise than New York City.

      In sum, after considering all these factors, American Fiber has failed to meet its burden of demonstrating that a transfer of venue is appropriate.  The Court will therefore deny the motion to transfer.

## ORDER

      Based on the foregoing, it is **HEREBY ORDERED** that defendant's Motion to Dismiss for Improper Venue, or In the Alternative, for Change of Venue (Dkt. No. 12) is DENIED.

DATED: September 19, 2012

Edward J. Lodge
District Judge
United States District Court